UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>     v.<br><br>KEITH BENNETT GORDON STUDHORSE, II,<br><br>                     Defendant. | NO: 2:16-CR-0087-TOR<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant's Motion to Dismiss (ECF No. 18). This matter was heard on July 28, 2016, in Spokane, Washington. John B. McEntire, IV represented Defendant. George J.C. Jacobs III appeared on behalf of the United States. The Court—having reviewed the parties' completed briefing and heard from counsel—is fully informed.

**BACKGROUND**

On May 17, 2016, a grand jury issued an Indictment against Defendant Keith Studhorse. ECF No. 1. Count 2 of the Indictment, the count at issue here,

ORDER DENYING DEFENDANT'S MOTION TO DISMISS~ 1

1  charged Defendant with illegally possessing body armor in violation of 18 U.S.C.

2  § 931(a). To be convicted of this offense, a defendant must have at least one prior

3  felony conviction for a "crime of violence," as that phrase is defined under 18

4  U.S.C. § 16. Defendant has three potentially violent prior convictions: attempted

5  first degree murder, second degree manslaughter, and riot with a deadly weapon

6  under Washington law. *See* ECF No. 18 at 3.

7      In the instant motion, Defendant moves to dismiss the § 931(a) charge,

8  contending that none of his prior convictions, including his attempted first degree

9  murder conviction, constitutes a prior "crime of violence." ECF No. 18.[1]

## DISCUSSION

11      Pursuant to 18 U.S.C. § 931, an individual who has been convicted of a

12  felony that is a "crime of violence," as that phrase is defined under 18 U.S.C. § 16,

13  is prohibited from purchasing, owning, or possessing body armor. 18 U.S.C.

14  § 931(a). Section 16, in turn, defines "crime of violence" as follows:

15      (a) an offense that has as an element the use, attempted use, or
        threatened use of physical force against the person or property of
16          another, or

---

[1] This determination is a question of law which the Court may properly decide pretrial. *See United States v. Amparo*, 68 F.3d 1222 (9th Cir. 1995).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS~ 2

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

Because subpart (b) of section 16, previously known as the residual clause, has been declared unconstitutionally vague, *see Dimaya v. Lynch*, 803 F.3d 1110, 1119-20 (9th Cir. 2015) and *United States v. Hernandez–Lara*, 817 F.3d 651, 651–53 (9th Cir. 2016) (both holding the residual clause unconstitutional in light of the Supreme Court's decision in *Johnson v. United States*, 135 S.Ct. 2551 (2015) (*Johnson II*), the issue before the Court is whether Defendant has been convicted of a felony that constitutes a "crime of violence" under subpart (a), known as the elements clause.

**A. Analytical Approach**

Determining whether a prior conviction constitutes a "crime of violence" involves a three-step process. *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867-68 (9th Cir. 2015).

At step one, the court employs the categorical approach to determine whether the prior conviction is overinclusive; that is, whether the statute "criminalizes both conduct that does and conduct that does not qualify" as a crime of violence. *United States v. Werle*, 815 F.3d 614, 618 (9th Cir. 2016) (interpreting the term "violent felony" under the Armed Career Criminal Act, 18 U.S.C.

§ 924(e)). Step one is accomplished by comparing the elements of the state offense to the elements listed under the definition. *Id.*; *Taylor v. United States*, 495 U.S. 575, 600-02 (1990) (holding that the categorical approach requires that the court look "only to the fact of conviction" and "the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions"). "[I]f the statute's elements are the same as, or narrower than, those of the [definition]," the statute is categorically a crime of violence. *Descamps v. United States*, 133 S.Ct. 2276, 2281 (2013) (bracketed material added). If, however, the statute is broader than the definition—"meaning that it criminalizes conduct that goes beyond the elements" as listed in the definition—the court proceeds to step two. *Lopez-Valencia*, 798 F.3d at 867-68.

At step two, the court determines whether the overinclusive statute is divisible or indivisible. *Lopez-Valencia*, 798 F.3d at 868. If the statute is indivisible, or non-alternatively phrased, then the analysis stops "because a conviction under an indivisible, overbroad statute can *never* serve as a predicate offense." *Id.* If, however, the statute is divisible, or alternatively phrased, then the court proceeds to step three. *Id.*

At step three—which the court reaches only if the underlying state conviction is both overbroad and divisible—the court examines judicially noticeable documents under the modified categorical approach to determine the

ORDER DENYING DEFENDANT'S MOTION TO DISMISS~ 4

elements of the statute the defendant violated and whether the elements of his conviction match the elements of the generic definition. *Id.*

### B. Application of Analytical Approach to Defendant's Prior Conviction for Attempted First Degree Murder[2]

At step one, the Court must engage in a side-by-side analysis of the elements of Defendant's state offense and the elements of the federal definition of a "crime of violence." As explained above, a violation of the state statute is categorically a crime of violence "only if the [state] statute's elements are the same as, or narrower than," those in the definition of "crime of violence." *See Descamps*, 133 S.Ct. at 2281; *Werle*, 815 F.3d at 618 (noting that a statute is overinclusive if it

---

[2] While Defendant has three prior convictions, this Court need not address all three. The Government has declined to address whether Defendant's prior conviction for second degree manslaughter is a "crime of violence." *See* ECF No. 19. And while the Ninth Circuit's opinion in *Werle*, 815 F.3d at 623 (interpreting the narrower ACCA definition), may foreclose a finding that Washington's riot with a deadly weapon statute constitutes a "crime of violence," this Court need not decide this issue here as it finds Defendant's first degree murder conviction constitutes a "crime of violence."

ORDER DENYING DEFENDANT'S MOTION TO DISMISS~ 5

"criminalizes both conduct that does and conduct that does not qualify as a [crime of violence]").

On August 11, 1994, Defendant pleaded guilty in Spokane County Superior Court to attempted first degree murder. ECF No. 19-1. Washington's first degree murder statute reads as follows:

> A person is guilty of first degree murder when—
>
> a) with a premeditated intent to cause the death of another person, he or she causes the death of such person or of a third person; or
>
> b) under circumstances manifesting an extreme indifference to human life, he or she engages in conduct which creates a grave risk of death to any person, and thereby causes the death of a person; or
>
> c) he or she commits or attempts to commit the crime of either (1) robbery in the first or second degree, (2) rape in the first or second degree, (3) burglary in the first degree, (4) arson in the first or second degree, or (5) kidnapping in the first or second degree, and in the course of or in furtherance of such crime or in immediate flight therefore, he or she, or another participant, causes the death of a person other than one of the participants.

RCW 9A.32.030(1).

The federal definition, meanwhile, contains the following elements: "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). This definition has a *mens rea* element and

ORDER DENYING DEFENDANT'S MOTION TO DISMISS~ 6

a physical force element. *See United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015).

In *Johnson I*, the Supreme Court addressed the meaning of "physical force" in the definition of "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(i).[3] The Court began by noting that the adjective "physical" is clear: "[i]t plainly refers to force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force." *Johnson v. United States*, 559 U.S. 133, 138 (2010) (*Johnson I*). The Court went on to define "force," as used under section 924(e)'s definition of "violent felony," as "*violent* force—that is force capable of causing physical pain or injury to another person." *Id.* at 140 ("[E]ven by itself, the word 'violent' . . . connotes a substantial degree of force. When the adjective 'violent' is attached to the noun 'felony' its connotation of strong physical force is even clearer." (internal citations omitted)). In so holding, the Court rejected the common law meaning of force—that is, "the slightest offensive touching"—holding that it a "comical misfit with the defined term." *Id.* at 145.

---

[3] Title 18, section 924(e)(1) of the U.S. Code enhances the sentence of an individual who violates section 922(g) and has three "violent felony" convictions.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS~ 7

While *Johnson I* concerned the definition of "physical force" in the context of the ACCA, it relied in large part on its earlier ruling in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), which interpreted the "very similar" statutory definition of "crime of violence" in 18 U.S.C. § 16(a), the same statute at issue here. *Johnson I*, 559 U.S. at 139-40. Specifically, the *Johnson I* Court emphasized the following passage from *Leocal*:

> In construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of the term "crime of violence." The ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), *suggests a category of violent, active crimes* . . . .

*Id.* at 140 (emphasis added) (quoting *Leocal*, 543 U.S. at 11). Since the Court's decisions in *Leocal* and *Johnson I*, other courts have similarly held that *Johnson I*'s definition of "force" in the ACCA context applies to section 16(a)'s use of "force" in its definition of "crime of violence." *See, e.g.*, *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 853-54 (9th Cir. 2013) ("[W]e give the term ['physical force'] its ordinary meaning, which in this context [under section 16(a)] is 'violent force' or 'force capable of causing physical pain or injury to another person." (citing *Johnson I*, 559 U.S. at 140)). It is worth noting, however, that the definitions of "violent felony" under section 924(e)(1) and "crime of violence" under section 16(a) are similar, but not exact: while "violent felony" contemplates an offense

ORDER DENYING DEFENDANT'S MOTION TO DISMISS~ 8

"against the person of another," 18 U.S.C. § 924(e)(1), "crime of violence" contemplates an offense "against the person *or property* of another," 18 U.S.C. § 16(a).[4]

Four years after *Johnson I* was decided, the Supreme Court, in *United States v. Castleman*, 134 S.Ct. 1405 (2014),[5] addressed the meaning of "force" in section

---

[4] Moreover, considering that section 16's definition of "crime of violence" includes any offense—not just a felony—"that has as an element the use, attempted use, or threatened use of physical force," it is at least arguable that *Johnson I*, which defined "force" as used in the definition of "violent *felony*" under section 924(e)(1), is inapplicable. After all, the *Johnson I* Court specifically highlighted the significance of the noun "felony" when interpreting the meaning of force as used in the definition of "violent felony." *See* 559 U.S. at 140-42. The fact that 18 U.S.C. § 931 prohibits an individual who has been convicted of a *felony* "crime of violence" from possessing a gun does not impact the broad definition of "crime of violence" which is separately set forth under section 16(a) and includes both felonies and misdemeanors.

[5] The Ninth Circuit's opinion in *Rodriguez-Castellon*, 733 F.3d 847, was decided without the benefit of *Castleman*.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS~ 9

921(a)(33)(A)'s definition of "misdemeanor crime of domestic violence."[6] Like the relevant statutory section in *Johnson I*, section 921(a)(33)(A) defines "misdemeanor crime of domestic violence" as an offense that "has, as an element, the use or attempted use of physical force." 18 U.S.C. § 921(a)(33)(A). However, in *Castleman*, and unlike in *Johnson I*, the Court concluded that "force" in this context *should* be given its common law meaning—namely, offensive touching. 134 S.Ct. 1405, 1411-13 (2014). As such, the *Castleman* Court ultimately held that the defendant's conviction for domestic assault under Tennessee law—which prohibited intentionally or knowingly causing bodily injury—matched the elements under the general federal definition and thus constituted a "misdemeanor crime of domestic violence."[7] *Id.* at 1414.

---

[6] Title 18, section 922(g)(9) of the U.S. Code prohibits someone convicted of a "misdemeanor crime of domestic violence" from possessing a firearm.

[7] The Court skipped past the categorical approach (step one), noted that the parties agreed that the statute is divisible (step two), and proceeded to decide the case based on the modified categorical approach (step three). *Castleman*, 134 S.Ct at 1414.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS~ 10

Importantly, in reaching this conclusion, the Court rejected the defendant's argument that there is no "use of force" in the example of a person convicted under the statute for "causing bodily injury" by poisoning a victim's drink:

> The "use of force" in Castleman's example is not the act of "sprinkling" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim."

*Id.* at 1415.

Justice Scalia, concurring in part and in the Court's judgment, noted that the Tennessee assault statute would have satisfied even *Johnson I*'s definition of "violent force" "since it is impossible to cause bodily injury without using force 'capable of' producing that result." *Id.* at 1416-17 (Scalia, J., concurring). The *Castleman* majority expressly declined to reach the issue of "[w]hether or not the causation of bodily injury necessarily entails violent force." *Id.* at 1413.

Here, Defendant does not assert that Washington's first degree murder statute is over-inclusive as to the requisite *mens rea*. ECF No. 18 at 13 n.12. Rather, he asserts that Washington's first degree murder statute is over-inclusive and thus not categorically a "crime of violence" because an individual may be convicted of first degree murder with markedly less force than "violent force." ECF No. 18 at 7-13. In support of this argument, Defendant cites to several

ORDER DENYING DEFENDANT'S MOTION TO DISMISS~ 11

Washington cases upholding first-degree felony murder convictions. In one, the defendant started a fire, fled the scene, and, in furtherance of the arson, caused the death of one of the responding firemen who died from carbon monoxide poisoning. *Id.* (citing *State v. Leech*, 114 Wash.2d 700 (1990)). In another, the defendant helped plan the burglary and fled the scene and, in the course of or in furtherance of the burglary, a co-participant shot and killed the victim. *Id.* (citing *State v. Carter*, 154 Wash.2d 71 (2005)). Finally, another case involved a defendant who committed or attempted to commit burglary and fled the scene, and, in the course of or in furtherance of the underlying offense, his co-participant allegedly beat the victim to death. *State v. Dudrey*, 30 Wash.App. 447 (1981)).[8] *Id.*

In making this argument, however, Defendant fails to address the Supreme Court's decision in *Castleman* and its explanation that injury from the force employed need not occur directly "as with a kick or punch." 134 S.Ct. at 1415 (noting that prior precedent did not hold that the word "use" alters the meaning of

---

[8] Defendant also proposes an intricate hypothetical. ECF No. 18 at 12-13. However, this Court relies on the case citations only. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (noting that there must be a "realistic probability, not a theoretical possibility, that the State would apply its statute" in the manner proposed).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS~ 12

"force"). In the arson example, the "use of force" was not simply the act of starting the fire; it was the act of intentionally employing the physics of fire and its processes and properties (*i.e.*, destruction, carbon monoxide) as a device to cause injury to person or property. The other two examples—which involved murder by shooting and murder by physically beating the victim to death—clearly involve use of violent force. That the defendant is not necessarily the actor employing the force that causes the harm in the felony murder provision is immaterial as each subpart of the statute for which defendant has been convicted still "has, as an element the use, attempted use, or threatened use of physical force against the person or property of another."

This Court declines to find, as Defendant would have it, that an individual can commit first degree murder without the use of violent force: such an act—that is, causing another's death—categorically involves the use of "force capable of causing physical pain or injury" to the person or property of another. *See Johnson*, 559 U.S.C. at 140; *see Castleman*, 134 S.Ct. at 1416-17 (Scalia, J., concurring) ("[I]t is impossible to cause bodily injury without using force 'capable of' producing that result."); *see also United States v. Yanes-Cruz,* 634 F.App'x 247, 252 (11th Cir. 2015) ("Unlike the simple battery statute at issue in *Johnson*, which someone can violate by merely touching another person, the Georgia statute at issue here requires 'substantial physical harm or visible bodily harm.' Such harm

ORDER DENYING DEFENDANT'S MOTION TO DISMISS~ 13

1 simply cannot be caused without the application of physical force—*i.e.*, force
2 capable of causing physical pain or injury to another person."). To find that
3 Washington's first degree murder statute does not constitute a "crime of violence,"
4 as Defendant advocates, would be an absurd result.

5       Because this Court finds that the elements of Washington's first degree
6 murder statute match the elements of the federal definition, Defendant's prior
7 conviction for attempted first degree murder is categorically a "crime of violence"
8 for purposes of 18 U.S.C. § 16(a) and, in turn, 18 U.S.C. § 931(a)(1), the basis for
9 Count 2 of the Indictment. *See Descamps*, 133 S.Ct. at 2281. Accordingly,
10 Defendant's Motion to Dismiss Count 2 of the Indictment (ECF No. 18) is denied.

11       **ACCORDINGLY, IT IS ORDERED:**

12       1.    Defendant's Motion to Dismiss (ECF No. 18) is **DENIED.**

13       2.    The District Court Executive is directed to enter this order and
14 provide copies to counsel.

15       **DATED** August 2, 2016.



                THOMAS O. RICE
            Chief United States District Judge